IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS ELLIOT JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> QYJON CLARK, as AGENT FOR THE ILLINOIS DEPARTMENT OF CORRECTIONS d/b/a JOLIET TREATMENT CENTER, <br><br> Defendant. | No. 18-cv-08090 <br> Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nicholas Elliot Johnson (Johnson) is a prisoner incarcerated with the Illinois Department of Corrections (IDOC) at the Joliet Treatment Center (JTC). Johnson filed this lawsuit against defendant Qyjon Clark (Clark), a Correctional Treatment Officer Supervisor at JTC, pursuant to 42 U.S.C. § 1983, asserting claims of deliberate indifference and failure to protect. R. 9, Compl.[1]

Before the Court is Clark's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. R. 69, MSJ. For the following reasons, the Court grants Clark's motion.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background[2]

The following facts are set forth favorably to Johnson, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). While the Court draws all reasonable inferences from the facts in Johnson's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted). *See Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts.").

Johnson is currently incarcerated with IDOC at JTC. Pl.'s Resp. DSOF ¶ 1.[3] Johnson suffers from mood disorder, impulse issues, anger issues, clinical depression, and bipolar disorder. *Id.* ¶ 2. On or about July 12, 2018, Johnson was transferred to JTC. *Id.* ¶ 4. JTC is a treatment facility for adult men convicted of felonies who suffer from severe mental illness. *Id.* ¶ 3.

At all relevant times, Clark was employed by IDOC as a Correctional Treatment Officer Supervisor at JTC with job duties including supervising residents, supervising other officers, overseeing the safety, custody, and control of residents, and being mindful of the residents' mental stability. Pl.'s Resp. DSOF ¶ 5.

---

[2]The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

[3]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Clark's Statement of Undisputed Facts (R. 70-1); "Pl.'s Resp. DSOF" for Johnson's Response to Clark's Statement of Undisputed Facts (R. 71-1 at 1–3); "PSOAF" for Johnson's Statement of Additional Facts (R. 71-1 at 3–5); and "Def.'s Resp. PSOAF" for Clark's Response to Johnson's Statement of Additional Facts (R. 75).

Furthermore, he was responsible for protecting the health and safety of the residents within his charge, including Johnson. *Id.* ¶ 10. Clark does not have direct access to residents' protected medical information, but he is aware that the residents at JTC have been categorized as severely mentally ill. *Id.* ¶¶ 6–7; Def.'s Resp. SOAF ¶13. Clark does not have personal knowledge of Johnson's alleged history of self-harm. Pl.'s Resp. DSOF ¶ 8. Additionally, Clark does not have personal knowledge of any other complaints being made against him regarding harassment or intimidation of prisoners. *Id.* ¶ 9.

Michael Johnson, also incarcerated at JTC, stated that on July 28, 2018, he witnessed Johnson visibly agitated after an interaction with Clark and that no mental health professional was provided to Johnson when requested. SOAF ¶ 17; R. 71-5, Pl. Exh. F, Michael Johnson Aff. Other prisoners at JTC were made aware of and sometimes witnessed Clark attempting to provoke, intimidate, and agitate seriously mentally ill prisoners at JTC. SOAF ¶¶ 19, 21, 23; R. 71-5, Pl. Exh. G, Keith Clark Aff.; R. 71-5, Pl. Exh. H, Joseph Herman Aff.; R. 71-5, Pl. Exh. I, Michael Ludwick Aff.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th

Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

In Count I, Johnson claims that Clark was deliberately indifferent towards Johnson because he knew of Johnson's mental illnesses, exhibited disregard for the substantial risk of serious harm to Johnson, and engaged in intentional, wrongful acts against Johnson. Compl. ¶¶ 15–18. As a result of Clark's deliberate indifference, Johnson alleges that he resorted to an act of self-mutilation, harmed himself, attempted suicide, and suffered severe physical and emotional distress. *Id.* ¶¶ 21–23.

Under Count II, Johnson alleges that Clark failed to protect Johnson and posted a tangible threat to Johnson's safety by engaging in various actions against Johnson. Compl. ¶ 33. Johnson alleges that, as a result, he suffered severe physical

4

and emotional distress, his mental illnesses were exacerbated, and caused him to self-mutilate. *Id.* ¶ 34.

Clark advances three arguments in support of summary judgment. He first argues that as to Count I, Johnson has failed to provide sufficient admissible evidence that Clark knew of and disregarded an excessive risk to Johnson's health. R. 70, Memo. MSJ at 3–10.[4] As for Count II, Clark contends that Johnson has failed to provide admissible evidence that Clark knew of and disregarded a substantial risk of serious harm to Johnson. *Id.* at 10–11. Finally, Clark argues that Johnson's claims fail because he has qualified immunity from liability. *Id.* at 11–12.

Before addressing the substance of the motion, the Court must address a preliminary matter. Clark makes several objections in his response to Johnson's Statement of Additional Facts. Def.'s Resp. PSOAF. The Court addresses each objection. First, Clark asserts that several of Johnson's statements are irrelevant or not material to the outcome of the issues identified in his motion. Def.'s Resp. PSOAF ¶¶ 12–14. When a party moves for summary judgment in this District, it must submit, among other documents, a statement of undisputed material facts. *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1(a)). When responding to a summary judgment motion, the non-moving party may also present a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(3)(C). True, as Clark asserts, that a statement of facts under Local Rule 56.1 "should be limited to *material* facts." Def.'s Resp. PSOAF ¶¶ 12–14 (citing

---

[4]Clark failed to number the pages in his memorandum. Therefore, the Court relies on and references the CM/ECF page numbers.

*Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (emphasis in original). But, "[o]bjecting to materiality does not deny a fact. If that were the only objection, the fact would be deemed admitted . . ., though its materiality would still be a legal issue going to the merits of the summary judgment motion." *Fenje v. Feld*, 301 F. Supp. 2d 781, 818 (N.D. Ill. 2003) (internal citations omitted). Moreover, because a court must determine what is relevant at the summary judgment stage, "objections to facts based on relevancy are improper." *Nicole M. v. Bd. of Educ. of the City of Chi., Dist. 299*, 2010 WL 186701, at *4 n.2 (N.D. Ill. Jan. 14, 2010) (citing *Keefe v. Mega Enters., Inc.*, 2005 WL 693795, at *1 (N.D. Ill Mar. 23, 2005)). So, the Court, as part of its analysis, reviews the materiality of facts, and to the extent the Court determines that any facts are immaterial or irrelevant, the Court does not recite those facts or consider them in reaching the outcome on the merits of the motion.

Second, Clark asks the Court to strike and disregard Johnson's Additional Fact No. 15 because it lacks evidentiary support and only cites to the Complaint. Def.'s Resp. PSOAF ¶ 15. In this paragraph, Johnson states that on July 28, 2018, he requested to see a Mental Health Crisis Team Member at Joliet Treatment Center to help deal with his anger and distress. PSOAF ¶ 15. Johnson only cites to allegations in his Complaint for support. *Id.* (citing Compl. ¶¶ 18(d), 33(d)). It is axiomatic that a party cannot defeat summary judgment by "relying on unsubstantiated facts or by merely resting on his pleadings." *Johnson v. Obaisi*, 2022 WL 832639, at *5 (N.D. Ill. Mar. 21, 2022) (internal quotation and citation omitted). The Court agrees with Clark that Johnson's reliance on allegations in his Complaint as evidentiary support is

6

improper in the context of summary judgment, so the Court does not consider Johnson's Additional Fact No. 15.

Third, Clark makes a myriad of objections to certain facts based on affidavits executed by other prisoners. Clark disputes that the contents of the affidavits of Michael Johnson and Keith Clark are true and correct because Johnson authored the affidavits. Def.'s Resp. PSOAF ¶¶ 16, 17, 22, 23. Clark, however, cites to no authority as to why the Court should question the veracity of the statements in these affidavits just because someone else prepared them. And, "[i]t is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Vertex Refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 374 F. Supp. 3d 754, 765 (N.D. Ill. 2019) (citing *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996), amended (Mar. 28, 1996)).

Next, Clark challenges the veracity of the affidavits of Joseph Herman (Herman) and Michael Ludwick (Ludwick) because Johnson allegedly offered the affiants payment in exchange for their signatures on their affidavits. Def.'s Resp. PSOAF ¶¶ 18–21. "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. Local R. 56.1 (e)(3). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625,

7

632 (7th Cir. 2009). Here, Clark has not cited any specific evidentiary material that controverts the facts contained in these statements of facts. Instead, he asks the Court to disregard these statements because they are based on affidavits where the affiants allegedly received payment in exchange for signing their affidavits. Def.'s Resp. PSOAF ¶¶ 18–21. For this proposition, though, Clark cites only his own deposition transcript, in which he testified that Ludwick told Clark that Ludwick received food from Johnson in exchange for Ludwick signing his affidavit and that Herman told Clark that Herman was paid with food by Johnson in exchange for Herman signing his affidavit. R. 71-4, Clark Tr. at 49:14–51:20. These statements constitute inadmissible hearsay. *See Egan v. Freedom Bank*, 2012 WL 12996187, at *1 (N.D. Ill. June 5, 2012) ("Hearsay means a statement that the declarant does not make while testifying at the current trial and that a party offers in evidence to prove the truth of the matter asserted in the statement.") (citing Fed. R. Evid. 801(c)). And, the Court cannot consider it for the purposes of summary judgment. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016); *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Thus, Clark has not properly disputed these statements of fact, so the facts in these statements are deemed admitted for purposes of Clark's motion.

Lastly, Clark disputes the statements of fact based on inmate Keith Clark's affidavit to the extent it is not based on his personal knowledge. Def.'s Resp. PSOAF ¶ 23 (citing *Pryor v. City of Chi.*, 726 F. Supp. 2d 939, 943 (N.D. Ill. 2010)). This

8

argument, however, is underdeveloped as Clark does not assert that Keith Clark's affidavit is not actually based on his personal knowledge and does not explain how Keith Clark's affidavit is not based on his personal knowledge. Again, the Court will not develop this argument for Clark. *See Vertex Refining, NV, LLC*, 374 F. Supp. 3d at 765.

Having addressed these preliminary Local Rule 56 matters, the Court now turns to Clark's substantive arguments in support of his motion. The Court begins with his argument as to Count I.

### I.  Count I – Deliberate Indifference

Section 1983 creates a federal cause of action for the "deprivation under color of law, of a citizen's rights, privileges or immunities secured by the constitution or laws of the United States." 42 U.S.C. § 1983. To succeed on a Section 1983 claim, a plaintiff must prove that "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *First Midwest Bank, Guardian of the Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). The parties do not dispute the second element as it is undisputed that, at all relevant times, Clark was employed by IDOC and was performing his official duties. *See* Pl.'s Resp. DSOF ¶ 5.

The Eighth Amendment protects against "cruel and unusual punishments." U.S. Const. amend. VIII. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A claim of deliberate indifference to a serious medical need has both an objective and a subjective element. *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (internal citation omitted). To satisfy the objective element, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id.* (internal quotation and citation omitted). To satisfy the subjective element, a prisoner must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Townsend*, 759 F.3d at 689 (internal quotation and citation omitted). Specifically, "the official must know of and disregard an excessive risk to inmate health." *Id.* In other words, he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference." *Id.* A prisoner need not establish that the official intended or desired the harm that transpired. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Instead, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (internal citation omitted). The Seventh Circuit has held that this is a high bar "because it requires a showing of something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id.* (internal quotation and citation omitted); *see also Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (something close to recklessness is required).

Clark does not dispute the objective element, stating that Johnson's "mood disorder, issues with impulse, anger issues, clinical depression, and bipolar disorder placed him at a significant risk of harm." MSJ Memo. at 8; R. 71, Resp. at 3. *See also*

10

*Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) ("The need for a mental illness to be treated could certainly be considered a serious medical need."); *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (finding that mental illness constitutes an "objectively serious medical condition").

For the subjective element, Clark first argues that Johnson has failed to provide sufficient evidence that Clark knew of Johnson's conditions. MSJ Memo. at 7–10. He asserts that he had no knowledge of Johnson's medical condition beyond being generally aware that JTC residents suffered from mental illness. *Id.* at 9 (citing Pl.'s Resp. DSOF ¶¶ 6–8). Johnson counters that Clark was aware of the fact that JTC inmates suffered from mental illnesses based on the nature of the treatment center. Resp. at 4. Because of this, Johnson posits that Clark could make a reasonable inference that the inmates he dealt with on a regular basis, including Johnson, were more susceptible to harming themselves when agitated, intimidated, or threatened. *Id.*

In his reply, Clark interprets Johnson's argument, at best, to mean that Clark *should* have known by Johnson's inferred mental illness that he faced a threat of potential harm. R. 74, Reply at 1–2. Clark contends that the law requires actual knowledge of a potential risk. *Id.* at 2 (citing *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). Clark also asserts that Johnson provides no authority stating that inmates at JTC are subject to a different standard of care than inmates at other correctional centers. *Id.* The Court agrees with Clark.

11

The Court finds, in viewing the facts in the light most favorable to Johnson, as it must, that Clark was not subjectively aware of Johnson's serious medical needs beyond his general awareness that residents at JTC suffer from mental illness. To satisfy the second prong of the deliberate indifference inquiry, the official must know of and disregard an excessive risk to prisoner health, that is, he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Townsend*, 759 F.3d at 689 (quoting *Farmer*, 511 U.S. at 837). Johnson provides no evidence that Clark did *in fact* draw any inference that a risk of serious harm exists, couching his language in the subjunctive that Clark *could* have made a reasonable inference. Resp. at 4 (emphasis added).

Clark further argues that the actions Johnson attributes to Clark "hardly rise to the level of an Eighth Amendment violation." MSJ Memo. at 7. He suggests that even if he were subjectively aware of Johnson's specific medical conditions, he was not deliberately indifferent because Johnson's complaints consist of alleged insults and verbal harassment that did not result in significant psychological or physical harm, therefore not implicating the Eighth Amendment. *Id*. at 9–10. Clark contends that "[s]imple verbal harassment and use of repugnant words" do not establish cruel and unusual punishment under the Eighth Amendment. *Id*. at 7 (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000))[5]. He also argues that "genteel language and good manners" do not always define relationships between prisoners and prison staff.

---

[5]The Court notes that *DeWalt* has been abrogated on other grounds. *See Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

12

*Id.* (citing *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019)). Clark, though, acknowledges that where harassment inflicts psychological or physical harm, the Eighth Amendment may be implicated. *Id.* (citing *Lisle*, 933 F.3d at 718; *Gully v. Hundley*, 2019 WL 4727698, at *3 (S.D. Ill. Sept. 27, 2019)).

Johnson responds that the cases relied upon by Clark (*DeWalt*, *Lisle*, *Gully*) are distinguishable because they involve prisoners at "regular" correctional centers. Resp. at 6. By the very nature of the institution, he suggests, prisoners at JTC "are more susceptible to severe mental illnesses." *Id.* Johnson also submits that Clark's most egregious act occurred on July 28, 2018, when Clark allegedly agitated and distressed Johnson to the point that he ultimately requested to see a Mental Health Crisis Team Member but was denied. *Id.* at 7. As a result, Johnson contends that he was left without a way to address his anger, causing him to cut his left arm so severely that he was taken to medical and placed on crisis watch for six days to prevent further self-harm. *Id.*

The Court finds that Clark's actions do not rise to the level of deliberate indifference. While the Court agrees with Johnson that the three cases cited by Clark (*DeWalt*, *Lisle*, *Gully*) involve inmates at correctional centers instead of treatment centers like JTC, this differentiation does not advance Johnson's case. Johnson has not cited to any authority finding that inmates at treatment centers are subject to a different standard in determining deliberate indifference. Johnson's characterization of his interaction with Clark on July 28, 2018 consists of insults and unpleasant remarks, but "simple verbal harassment does not constitute cruel and unusual

13

punishment." *DeWalt*, 224 F.3d at 612. Moreover, as Clark points out, Johnson has not presented evidence that Clark made the alleged comments to Johnson. *See* Reply at 2. Additionally, Johnson provides no evidence either that Johnson made his request to see a crisis team member to Clark or that Clark himself was responsible for denying Johnson's request. Finally, while Johnson provides evidence that Clark attempted to provoke, intimidate, and agitate seriously mental ill inmates of JTC (SOAF ¶¶ 19, 21, 23), Johnson provides no evidence whatsoever that Clark made the numerous alleged comments or engaged in the various alleged actions towards Johnson, as Johnson claims in his Complaint. *See* Compl. ¶ 18. The Court finds that Clark did not have the "sufficiently culpable state of mind" to satisfy the second prong of Johnson's deliberate indifference claim. Therefore, the Court grants Clark's motion with respect to Count I.

## II.   Count II – Failure to Protect

To state a failure to protect claim, a plaintiff-prisoner must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834); *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020). To satisfy the first, objective prong, a plaintiff must show not only that he experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that the serious harm might actually occur. *Brown*, 398 F.3d at 910. The harm must be "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. Where the harm at issue is a suicide or attempted suicide, the

14

objective element is easily met, as "it goes without saying that suicide is a serious harm." *Sanville*, 266 F.3d at 733.

The second, subjective component requires a showing that that the defendant had actual, and not just constructive, knowledge of the risk to be liable. *LaBrec*, 948 F.3d at 841 (internal citation omitted). This means that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* (quoting *Farmer*, 511 U.S. at 837); *see also Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (the plaintiff must show that the defendant (1) subjectively knew the prisoner was at substantial risk of committing suicide, and (2) intentionally disregarded that risk).

Clark points to allegations from Johnson pursuant to which Clark allegedly grabbed Johnson's television, refused to give Johnson toilet paper, refused him access to the "day room", and called him names. MSJ Memo. at 11. He posits that Johnson has failed to provide sufficient admissible evidence of significant psychological or physical harm, and that Johnson simply alleging that he suffered such harm is insufficient. *Id.* (citing Compl. ¶ 34). Clark contends that even if his behavior created some risk to Johnson, "that risk merely resulted in superficial harm, not serious harm." *Id.*

Johnson offers less than one page of argument, and relies on the same points he argued for Count I, namely that Clark knows that JTC is a facility for prisoners with severe mental illnesses; Clark is charged with protecting the health and safety

15

of JTC residents; therefore, Clark knew of a substantial risk of harm to Johnson and, through his actions, was deliberately indifferent. Resp. at 9.

In viewing the facts in the light most favorable to Johnson, as it must, the Court finds that Johnson has failed to meet his burden for this claim as well. The Court is somewhat perplexed by Clark's argument regarding the objective element, as Clark acknowledged under Count I that Johnson's "mood disorder, issues with impulse, anger issues, clinical depression, and bipolar disorder placed him at a significant risk of harm." MSJ Memo. at 8.

But the Court agrees with Clark that there is no evidence in the record that he knew Johnson faced a tangible threat and disregarded that threat. *See* Reply at 2. Johnson has failed to show that Clark had actual knowledge that Johnson was at substantial risk of harming himself or even committing suicide, and that Clark intentionally disregarded that risk. *See Collins*, 462 F.3d at 761. It is undisputed that Clark does not have direct access to JTC residents' protected medical information, nor does he have personal knowledge of Johnson's alleged history of self-harm. Pl.'s Resp. DSOF ¶¶ 6, 8. Further, the Court agrees with Clark that for the July 28, 2018 incident, Johnson "fails to provide evidence of who he sought this assistance from [or] who allegedly denied this request." Reply at 3. Simply put, the Court finds that Johnson has failed to show that Clark had the subjective knowledge that Johnson was at substantial risk of harming himself to satisfy the second prong of Johnson's failure to protect claim. Therefore, the Court grants Clark's motion with respect to Count II.

The Court need not address Clark's qualified immunity defense as it is granting summary judgment on the merits for both Counts I and II in Clark's favor.

## Conclusion

For the reasons given above, the Court grants Clark's motion for summary Judgment. The Court enters summary judgment in favor of Clark and against Johnson on Counts I and II. This civil case is terminated.

Dated: March 31, 2022

United States District Judge
Franklin U. Valderrama